1  Michael A. Velthoen (SBN 187909)
   Leslie A. McAdam (SBN 210067)
2  Max R. Engelhardt (SBN 310968)
   **FERGUSON CASE ORR PATERSON LLP**
3  1050 S. Kimball Road
   Ventura, California 93004
4  Telephone: (805) 659-6800
   Facsimile:  (805) 659-6818
5  Email:  mvelthoen@fcoplaw.com
           lmcadam@fcoplaw.com
6          mengelhardt@fcoplaw.com

7  *Attorneys for Plaintiffs*

8  Michael A. Strauss (SBN 246718)
   Aris E. Karakalos (SBN 240802)
9  **STRAUSS & STRAUSS, APC**
   121 N. Fir St., Suite F
10 Ventura, California 93001
   Telephone: (805) 641-6600
11 Facsimile:  (805) 641-6607
   Email:  mike@strausslawyers.com
12         aris@strausslawyers.com

13 *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL GONZALES, individually and on behalf of all aggrieved employees, SERGIO ROCHA, individually and on behalf of all aggrieved employees, NORBETO ALARCON, individually and on behalf of all aggrieved employees, ALBERTO ARENA, individually and on behalf of all aggrieved employees, FELIPE BECERRA, individually and on behalf of all aggrieved employees, CRAIG BOWLAN, individually and on behalf of all aggrieved employees, RONALD FLORES, individually and on behalf of all aggrieved employees, DENNIS HARMON, individually and on behalf of all aggrieved employees, GERALD LLORENCE, individually and on behalf of all aggrieved employees, JULIO HERNANDEZ, individually and on behalf of all aggrieved employees, MICHAEL RALSTON, individually and on behalf of all aggrieved employees, RICARDO RAMOS, individually and on behalf of all aggrieved employees, | Case No.<br><br>**COMPLAINT**<br><br>*DEMAND FOR JURY* |

| | |
|---|---|
| 1 | RAUL ROMERO, individually and on behalf of all aggrieved employees |
| 2 | CARLOS SERPAS, individually and on behalf of all aggrieved employees |
| 3 | RAYMOND ULMER, individually and on behalf of all aggrieved employees and |
| 4 | EVERARDO VILLA, individually and on behalf of all aggrieved employees, |
| 5 | Plaintiff, |
| 6 | v. |
| 7 | CHARTER COMMUNICATIONS, LLC, and CHARTER COMMUNICATIONS, |
| 8 | INC. |
| 9 | Defendants. |

## I. INTRODUCTION

Plaintiffs MICHAEL GONZALES, SERGIO ROCHA, NORBETO ALARCON, ALBERTO ARENA, FELIPE BECERRA, CRAIG BOWLAN, RONALD FLORES, DENNIS HARMON, GERALD LLORENCE, JULIO HERNANDEZ, MICHAEL RALSTON, RICARDO RAMOS, RAUL ROMERO, CARLOS SERPAS, RAYMOND ULMER, and EVERARDO VILLA (collectively referred to herein as "Plaintiffs"), by and through their counsel, bring claims herein individually and on behalf of all aggrieved employees and all others similarly situated pursuant to the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* (the "FLSA"), and individually pursuant to the California Labor Code and the California Unfair Competition Law, against Defendants CHARTER COMMUNICATIONS, LLC and CHARTER COMMUNICATIONS, INC., and their subsidiaries and affiliates. Plaintiffs allege upon personal belief as to themselves and their own acts, and as for all other matters, upon information and belief, and based upon the investigation made by their counsel, as follows:

## II. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

2. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C.

§1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants reside and do business within this District, including operating a field operations maintenance technician office located in San Clara County at 8120 Camino Arroyo, Gilroy, California 95020.

### III.    PARTIES

4. Defendant Charter Communications, LLC is a Delaware limited liability company with a principal place of business is at 12405 Powerscourt Drive, St. Louis, Missouri 63131. On information and belief, Charter Communications, LLC is a citizen of Missouri and Delaware.

5. Defendant Charter Communications, Inc. is a Delaware corporation with its principal place of business is at 12405 Powerscourt Drive, St. Louis, Missouri 63131. Under 28 U.S.C. § 1332(c)(1), Charter Communications, Inc. is a citizen of Delaware and Missouri. Defendants Charter Communications LLC and Charter Communications, Inc. are collectively referred to herein as "Charter."  Charter is a provider of cable, internet, and telecommunications products and services in the state of California, and is an "employer" within the meaning of 29 U.S.C. § 203(d) of the FLSA.

6. Plaintiffs are each natural persons and were each employed by Charter as full-time, non-exempt "employees," as defined by Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

7. Plaintiffs are all non-exempt hourly employees of Defendants in California. Plaintiffs are all current employees of Defendants in California, except for Plaintiff RAUL ROMERO who is no longer employed by Defendants.

8. Plaintiff MICHAEL GONZALES is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

9. Plaintiff SERGIO ROCHA is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

//

10. Plaintiff NORBETO ALARCON is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

11. Plaintiff ALBERTO ARENA is a resident of Ventura County and has worked for Charter since November 2018 to the present as a non-exempt hourly Field Operations Maintenance Technician.

12. Plaintiff FELIPE BECERRA is a resident of Los Angeles County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

13. Plaintiff CRAIG BOWLAN is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

14. Plaintiff RONALD FLORES is a resident of Los Angeles County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

15. Plaintiff DENNIS HARMON is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

16. Plaintiff GERALD LLORENCE is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

17. Plaintiff JULIO HERNANDEZ is a resident of Los Angeles County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

18. Plaintiff MICHAEL RALSTON is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

//

19. Plaintiff RICARDO RAMOS is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

20. Plaintiff RAUL ROMERO is a resident of Ventura County and worked for Charter from prior to March 2016 to August 2019 as a non-exempt hourly Field Operations Maintenance Technician.

21. Plaintiff CARLOS SERPAS is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

22. Plaintiff RAYMOND ULMER is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

23. Plaintiff EVERARDO VILLA is a resident of Ventura County and has worked for Charter since prior to March 2016 to the present as a non-exempt hourly Field Operations Maintenance Technician.

## IV.  FACTS

### A. CHARTER'S ON-CALL POLICY

24. Plaintiffs worked for Charter as "Field Operations Maintenance Technicians" ("Field Ops Techs") during the applicable statute of limitations period. Field Ops Techs are, among other things, responsible for responding to emergency outages in Charter's cable, internet, and telecommunication services infrastructure. Response time to these emergencies is a critical aspect of the job as a single outage may affect tens of thousands of Charter's customers.

25. As Field Ops Techs, Plaintiffs were subjected to Charter's "on-call" policy (the "On-Call Policy"). The stated purpose of the On-Call Policy was to ensure that Charter's network and systems functioned reliably at all times. To that end, Charter required Plaintiffs to work "on-call" for week-long periods in order to respond to plant and service emergencies outside of Plaintiffs' regular work schedule.

//

26. Plaintiffs were assigned 24-hour a day on-call duty according to a rotating schedule such that each of the Plaintiffs worked on-call approximately every four to five weeks. For those weeks, Plaintiffs worked 128 on-call hours in addition to their regular full-time 40-hour workweek.

### B.   CHARTER'S PAYMENT OF "ON-CALL PAY"

27. Charter and Plaintiffs agreed that on-call duty was compensable work. Specifically, Charter paid Plaintiffs "on-call pay," which was flat-rate (believed to be approximately $245.00) for each week-long on-call period.

28. If Plaintiffs were called in and required to actually report to a specific location while on-call, in addition to the weekly "on-call pay," Charter paid "call-out pay," which was 1.5 times the employee's regular rate of pay. Plaintiffs received at least two hours of call-out pay even if attending to the job order took less than two hours. Plaintiffs received all said two-hour minimum call-out pay. As such, Plaintiffs make no claims herein for non-payment of call-out pay.

### C.   CHARTER'S ON-CALL RESTRICTIONS

29. While working on-call, Charter subjected Plaintiffs and all other Field Ops Techs to the same numerous unreasonable and excessive restrictions, with regard to cell phone maintenance, accessibility via cell phone, uniform requirements, physical/mental condition requirements, response time and reporting time.

### D.   CHARTER'S INTENSE "BUCKET TRUCK" RESTRICTIONS

30. Exacerbating the confinement of the geographic and time constraints, Charter required Field Ops Techs to be effectively anchored to Charter-owned vehicles the entire time that they were on-call. If called in, Field Ops Techs were required report to the site in a Charter-owned vehicle, which was a large "bucket truck" outfitted with a mechanized crane and aerial lift platform (the "Bucket Truck").

31. Per Charter policy, Field Ops Techs took the Bucket Trucks home with them after their regular workweek shifts, including the weeks that they were on-call. Charter monitored the exact location of each Bucket Truck through the ignition-triggered GPS systems installed on the trucks.

32. In order to "*minimize response time*" Charter permitted Field Ops Techs to drive the Bucket Trucks for "*non-business purposes*" during their on-call periods. However, these "non-business purposes" were extremely limited.

33. Charter allowed them to use the Buckets Truck for limited personal engagements that they needed to attend to more than a few minutes from their homes, but they were prohibited from using the Buckets Trucks as regular "daily driver" vehicles in order to perform day-to-day errands and quick trips. The result is that, while on-call, they parked and kept the Bucket Trucks at their residences, and they stayed at home tethered to them.

34. When Plaintiffs took the Bucket Trucks home, Charter required Plaintiffs to perform "Circle of Safety" inspections: (1) <u>every time</u> they drove the Bucket Trucks after leaving them unattended; or (2) <u>any time</u> they drove in reverse gear. They were also required on a <u>daily</u> basis – even on days in which they did not work one of their regular workweek shifts – to maintain the Bucket Trucks in a "*neat and clean*" condition by, among other things, disposing of all "*[e]xcessive trash (fast food bags, soft drink cans, coffee cups, candy bar wrappers, etc*." If involved in an accident in the Bucket Trucks during their on-call periods, even on days when they didn't work one of their regular workweek shifts, Field Ops Techs were required to submit to a drug and alcohol test within 24 hours.

35. In addition, every time Field Ops Techs left a Bucket Truck unattended, they were required to ensure that all doors and equipment containers were locked and that all applicable safety procedures had been followed.

**E.   CHARTER FAILED TO PAY ALL WAGES OWED**

36. As stated, during the on-call periods, Plaintiffs and all other Field Ops Techs worked 128 on-call hours. Despite Charter's agreement that on-call time was compensable working time, and the excessive degree of control exercised by Charter over Field Ops Techs during the on-call periods, Charter only paid them a flat-rate compensation of $245.00 per on-call period, or approximately $1.91 per on-call hour when divided equally.

37. Apart from non-payment of wages for on-call work, Charter's requirements that Field Ops Techs: (1) perform "Circle of Safety" inspections every time they drove the Bucket Trucks

outside of their regularly-scheduled shifts; and (2) perform daily maintenance and safety inspections and cleaning of the Bucket Trucks outside of their regularly-scheduled shifts, was work in excess of their regular 40-hour workweek. Charter failed to pay Plaintiffs and all other Field Ops Techs for this overtime work.

### F. FLSA COLLECTIVE ACTION ALLEGATIONS

38. Plaintiffs bring this action as a collective action on behalf of themselves and all other similarly aggrieved employees pursuant to 29 U.S.C. § 216(b) to recover unpaid wages, unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, attorneys' fees and costs, and other damages owed.

39. The proposed opt-in collective class of similarly aggrieved employees is defined as:

> All individuals who were employed, or are currently employed, by one or more of the Defendants, as field operations maintenance technicians or any other similarly-titled position at any time during the applicable statutory period.

40. This action is properly maintained as a collective action because the representative Plaintiffs are similarly situated to the members of the collective class with respect to job title, job description, training requirements, job duties, Charter's failure to pay overtime hours, including overtime for time spent working on-call, and the wage and hour violations alleged in this Complaint, amongst other things.

41. Charter encouraged, suffered and permitted the representative Plaintiffs and the collective class members to work more than forty (40) hours per week without the proper overtime compensation.

42. Charter knew that the representative Plaintiffs and the collective class members performed work that required additional wages and overtime compensation to be paid. Nonetheless, Charter operated under a cost-savings scheme, as described above, to deprive the representative Plaintiffs and the collective class members of wages and overtime compensation.

43. Charter's conduct, as alleged herein, was willful and has caused significant damage to the representative Plaintiffs and the collective class.

//

44. Charter is liable under the FLSA for failing to properly compensate the representative Plaintiff and the collective class. Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. §216(b), for the purpose of seeking unpaid wages, unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

45. Plaintiff estimates that there are in excess of 4,800 members of the collective class. The precise number of collective class members can be easily ascertained by using Charter's payroll and personnel records. Given the composition and size of the class, members of the collective class may be informed of the pendency of this action directly via U.S. mail, e-mail and by posting notice in Charter's offices.

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (29 U.S.C. §§ 206(a)(1)and 207(a)(1))
### Failure to Pay Minimum Wage and Overtime Wages
### (All Plaintiffs Against All Defendants)

46. Plaintiffs reallege and incorporate by reference the allegations of the above-numbered paragraphs as if fully set forth herein.

47. Plaintiffs and the collective class members all shared similar job titles, training, job descriptions, job requirements and compensation plans. Charter managed the work performed by Plaintiffs and the collective class members, including the amount of hours they worked. Charter dictated, controlled and ratified the wage and hour and all related employee compensation policies. Charter classified Plaintiffs and the collective members as non-exempt under the FLSA and paid them on an hourly rate.

48. Section 206(a)(1) of the Fair labor Standards Act ("FLSA") states that an employer must pay a non-exempt employee at a prescribed minimum wage for each hour worked.

49. Defendants failed to pay Plaintiffs and the collective class members for all hours they worked at the applicable federally mandated minimum wage.

//

//

50. Section 207(a)(1) of the Fair labor Standards Act ("FLSA") states that an employer must pay a non-exempt employee overtime, equal to at least 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

51. Defendants failed to pay Plaintiffs and the collective class members for all hours they worked at the applicable federally mandated overtime/double-time rates.

52. Two predominant factors are considered in determining whether an employee's "on-call" waiting time is compensable overtime. Those factors are: (1) any agreement between the parties; and (2) the degree to which the employee is free to engage in personal activities. *Owens v. Local No. 169, Ass'n of Western Pulp and Paper Workers*, 971 F.2d 347 (9th Cir. 1992.)

53. Charter paid Plaintiffs and the collective members class flat compensation of $245 as "on-call pay." Charter's agreement to pay Plaintiffs and the collective class members "on-call pay" was a tacit admission by Charter that the on-call time was compensable working time.

54. In addition, Plaintiffs and the collective class members were highly restricted while on-call. During their on-call weeks, Plaintiffs and the collective class members spent every minute outside of their regular full-time work schedules working on-call. Among other restrictions, they could not leave their coverage areas and they had to immediately respond to calls and immediately travel to job sites (in uniform) in order to resolve the emergencies within Charter's two-hour time requirement. Adding to these excessive geographic and unduly restrictive fixed time limit restrictions, Charter required Plaintiffs and the collective class members to be anchored to the Bucket Trucks. They had to stay with their trucks (or be no more than a few minutes away) at all times. In effect, this restriction confined them to their homes where the trucks were parked, or to the immediate vicinity, and it was akin to an on-premises living requirement. Plaintiffs and the collective class members could only travel in the trucks for limited purposes, and only then if they adhered to numerous restrictions including, among other things: that they travel alone; that they refrain from eating; that they pull over before making outgoing telephone calls (even if they had hands-free capability); and that they perform extensive maintenance and safety checks <u>every time</u> they began driving the trucks or <u>any time</u> that they drove in reverse gear. Further, Plaintiffs and the collective

class were required to conduct inspections on the trucks and maintain them on a daily basis, even on days on which they did not work one of their regular workweek shifts.

55. For the week-long periods that Plaintiffs and the collective class members worked on-call, the time that they worked on-call was in excess of 40 hours per week and compensable at 1.5 times the their regular rate of pay.

56. Further, Plaintiffs and the collective class members took the Bucket Trucks home after every shift, even when they were not working on-call. Charter required Plaintiffs and the collective class members perform "Circle of Safety" inspections: (1) <u>every time</u> they drove the Bucket Trucks after leaving them unattended; or (2) <u>any time</u> they drove in reverse gear.  All such "Circle of Safety" inspections conducted outside of their regularly-scheduled work shifts was additional work in excess of their regular 40-hour workweek.  Likewise, Charter's requirement that Plaintiffs and the collective class members perform daily maintenance and safety inspections and cleaning of the Bucket Trucks outside of their regularly-scheduled work shifts was additional work in excess of their regular 40-hour workweek.

57. Through its actions, policies and practices, Charter violated the FLSA by regularly and repeatedly failing to compensate them for all actual overtime worked at the proper rate of pay.

58. Charter's actions were willful and not in good faith.

59. As a direct and proximate cause of Charter's unlawful conduct, Plaintiffs and the collective class members have suffered and will continue to suffer damages in amounts which are presently unknown to Plaintiffs and the collective class members, but which exceed the jurisdictional limits of this Court, and which will be ascertained according to proof at trial.

60. Charter is liable to Plaintiffs and the collective class members for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. §216(b), as well as reasonable attorneys' fees, costs and expenses.

61. Plaintiffs and the collective class members are also entitled to injunctive relief to prevent Charter from continuing its violation of the FLSA, as well as other appropriate injunctive relief.

//

# COUNT II

**VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194, 1197, 1198**
**Failure to Pay Minimum Wage and Overtime/Double-Time Wages**
**(All Plaintiffs Against All Defendants)**

62. Plaintiffs reallege and incorporate by reference the allegations of the above-numbered paragraphs as through fully set forth herein.

63. Charter dictated, controlled and ratified the wage and hour and all related employee compensation policies.

64. Charter classified Plaintiffs as non-exempt under California law and paid them on an hourly rate.

65. California law requires payment of at least the state-mandated minimum wage for all hours worked by non-exempt employees. (See Lab. Code, §§ 1194, 1197.) Hourly wages cannot be averaged out to cover hours worked during which no compensation was paid. (See *Armenta v. Osmose* (2005) 135 Cal.App.4th 314, 322-24.)

66. Plaintiffs regularly worked hours for which they were not paid the state-mandated minimum wage.

67. California Labor Code § 510 codifies the right to overtime compensation at the rate of one and one-half times the regular rate for all hours worked in excess of eight (8) hours in a day or forty (40) hours in a work week, and to overtime compensation at twice the regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh day of work in a particular week.

68. Plaintiffs regularly worked overtime and double-time hours for which they were not paid the state-mandated overtime and double-time wages.

69. Instead of paying Plaintiffs either the proper minimum wages and overtime/double-time wages, Charter paid Plaintiffs flat compensation of $245 as "on-call pay." Charter's agreement to pay Plaintiffs "on-call pay" was a tacit admission by Charter that the on-call time was compensable working time.

70. In addition, Plaintiffs were highly restricted while on-call. During their on-call weeks, Plaintiffs spent every minute outside of their regular full-time work schedules working on-call.

Among other restrictions, they could not leave their coverage areas and they had to immediately respond to calls and immediately travel to job sites (in uniform) in order to resolve the emergencies within Charter's two-hour time requirement.  Adding to these excessive geographic and unduly restrictive fixed time limit restrictions, Charter required Plaintiffs to be anchored to the Bucket Trucks.  They had to stay with their trucks (or be no more than a few minutes away) at all times.  In effect, this restriction confined them to their homes where the trucks were parked, or to the immediate vicinity, and it was akin to an on-premises living requirement.  Plaintiffs could only travel in the trucks for limited purposes, and only then if they adhered to numerous restrictions including, among other things: that they travel alone; that they refrain from eating; that they pull over before making outgoing telephone calls (even if they had hands-free capability); and that they perform extensive maintenance and safety checks <u>every time</u> they began driving the trucks or <u>any time</u> that they drove in reverse gear. Further, Plaintiffs were required to conduct inspections on the trucks and maintain them on a daily basis, even on days on which they did not work one of their regular workweek shifts.

71. For the week-long periods that Plaintiffs worked on-call, the time that they worked on-call was in excess of 40 hours per week and compensable at 1.5 time the their regular rate of pay.

72. Further, Plaintiffs took the Bucket Trucks home after every shift, even when they were not working on-call.  When Plaintiffs took the Bucket Trucks home, Charter required Plaintiffs to perform "Circle of Safety" inspections: (1) <u>every time</u> they drove the Bucket Trucks after leaving them unattended; or (2) <u>any time</u> they drove in reverse gear.  All such "Circle of Safety" inspections conducted outside of their regularly-scheduled work shifts was additional work in excess of their regular 40-hour workweek. Likewise, Charter's requirement that Plaintiffs perform daily maintenance and safety inspections and cleaning of the Bucket Trucks outside of their regularly-scheduled work shifts was additional work in excess of their regular 40-hour workweek.

73. At all times relevant hereto, Charter failed to pay Plaintiffs minimum wages and overtime/double-time compensation in violation of California Labor Code § 510 § 1194, § 1197, and § 1198, and the applicable IWC wage orders.

74. Plaintiffs worked in excess of 40 hours per week for Charter but were not properly paid overtime wages in violation of the California Labor Code.  Through its actions, policies and

practices, Charter violated the California Labor Code by regularly and repeatedly failing to compensate them for all actual overtime worked at the proper rate of pay. Plaintiff seeks such minimum wages and overtime/double-time wages owed to them for the applicable statutory period measured backward from the date of the filing of the initial Complaint in this matter.

75. The exact amount of minimum wages and overtime/double-time owed will not be fully ascertained until discovery is completed. Until Defendants produce the necessary documents for an accounting, Plaintiff is unable to determine the exact amount of said wages.

76. Labor Code section 218.6 states, "[I]n any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code, which shall accrue from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2." Plaintiff seeks such interest on all minimum wages owed to them for the three-year period measured backward from the date of the filing of the initial Complaint in this matter.

77. Pursuant to Labor Code § 1194, Plaintiffs are entitled to recover unpaid minimum wages and overtime/double-time wages, as well as attorney's fees, costs, and interest.

78. Plaintiff seeks liquidated damages in an amount equal to the minimum wages due to him and the Putative Class under Labor Code section 1194.2. Plaintiffs are also entitled to injunctive relief to prevent Charter from continuing its California Labor Code violations, as well as other appropriate injunctive relief.

79. As a direct and proximate cause of Charter's unlawful conduct, Plaintiffs have suffered and will continue to suffer damages in amounts which are presently unknown to Plaintiffs but which exceed the jurisdictional limits of this Court, and which will be ascertained according to proof at trial.

//
//
//
//
//

# COUNT III

### VIOLATION OF CALIFORNIA LABOR CODE § 226(a)
### Failure to Provide Accurate Itemized Wage Statements
### (All Plaintiffs Against All Defendants)

80. Plaintiffs reallege and incorporate by reference the allegations of the above-numbered paragraphs as through fully set forth herein.

81. California Labor Code section 226 provides:
Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

82. In this case, Defendants have failed to provide such wage deduction statements to Plaintiffs in that their wage deduction statements do not include, without limitation, their gross wages earned, all hours worked, net wages earned, or all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

83. Pursuant to Labor Code section 226(e), damages are appropriate. At this time, Plaintiffs believe and allege that they are owed the maximum allowable penalty under section 226(e) because Defendants failed to provide adequate paycheck stubs.

84. Pursuant to Labor Code section 226, Plaintiffs are entitled to recover penalties of $50 for the initial pay period in which the violation occurred and $100 per pay period for each additional violation, up to $4,000 per employee, and an award of costs and reasonable attorney's fees.

85. The exact amount of damages under Labor Code section 226(e) will not be fully ascertained until discovery is completed. Until Defendants produce the necessary documents for an

accounting, Plaintiffs are unable to determine the exact amount of damages under Labor Code section 226(e).

86. Pursuant to Labor Code section 226(e), Plaintiff requests the court to award Plaintiffs' reasonable attorney's fees and costs incurred by Plaintiffs in this action.

## COUNT IV

**VIOLATION OF CALIFORNIA LABOR CODE § 203**
**Failure to Pay Wages Due Upon Termination**
**(Only Plaintiff RAUL ROMERO Against All Defendants)**

87. Plaintiff RAUL ROMERO realleges and incorporates by reference the allegations of the above-numbered paragraphs as through fully set forth herein.

88. Labor Code § 203 provides for the assessment of a penalty against the employer when there is a failure to pay wages due the employee at conclusion of the employment relationship.

89. Plaintiff RAUL ROMERO retired from Charter on or about August 2019.

90. Pursuant to California Labor Code section 203, it is alleged that Defendants have willfully failed to pay without abatement or reduction all the wages owed to Plaintiff RAUL ROMERO at the time of his separation.

91. Defendants are aware that they owe the wages claimed yet have willfully failed to make payment.

92. As a result of Defendants willful failure to pay all wages owed at termination, Plaintiff RAUL ROMERO seeks wages and penalties pursuant to Labor Code section 203. According to Labor Code section 203, these penalties consist of up to 30 days of pay for Plaintiff RAUL ROMERO at his regular rate of pay, including overtime.

93. Plaintiff RAUL ROMERO has been available and ready to receive wages owed to him.

94. Plaintiff RAUL ROMERO has never refused to receive any payment, nor has Plaintiff been absent from his regular place of residence.

//
//

95. Defendants' failure to pay wages due and owing to Plaintiff RAUL ROMERO as indicated in prior paragraphs was willful. Defendants have knowingly refused to pay any portion of the amount due and owing Plaintiff RAUL ROMERO.

96. Pursuant to Labor Code sections 218.5, Plaintiff RAUL ROMERO requests the Court to award him reasonable attorney's fees and costs incurred in this action.

97. Plaintiff RAUL ROMERO also requests all unpaid wages, Labor Code section 203 penalties and interest. The exact amount of actual wages and Labor Code section 203 penalties owed will not be fully ascertained until discovery is completed. Until Defendants produce the necessary documents for an accounting, Plaintiff RAUL ROMERO is unable to determine the exact amount of wages and Labor Code section 203 penalties owed.

## COUNT V

### FOR UNFAIR COMPETITION
### Cal. Bus. & Prof. Code § 17200, et seq.
### (Against All Defendants)

98. Plaintiffs reallege and incorporate by reference the allegations of the above-numbered paragraphs as through fully set forth herein.

99. California's Unfair Competition Law (Bus. & Prof. Code §17200 *et seq.*) (the "UCL") prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent, or deceptive business act or practice.

100. Charter is a "person" as that term is defined under the UCL.

101. Since at least in or about May 2016, and at all relevant times hereto, by and through the conduct described herein, Charter has engaged in unfair and unlawful business practices under California Business and Professions Code section 17200 et seq. and California case law including *Cortez v. Purolator Air Filtration Products Co*. (2000) 23 Cal.App.4th 163 by failing to properly pay all minimum and overtime/double-time wages to Plaintiffs.

102. As a direct and proximate result of Charter's unfair business practices, Plaintiffs have been injured in fact and have lost money or property, and Charter has been unjustly enriched.

//

103. As a result of the conduct of Defendants, Defendants profited from breaking the law. Plaintiffs seek disgorgement of this unlawfully obtained benefit (plus interest thereon) for the four-year period measured backward from the date of filing of the initial Complaint in this matter. Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all money and property of which Plaintiffs have been deprived and wrongfully retained by Charter.

104. Plaintiffs are further entitled to, and do, seek a declaration that the above-described business practices are unfair and unlawful and an injunction restraining Charter from further engaging in any of the above-described unlawful and unfair business practices.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs MICHAEL GONZALES, SERGIO ROCHA, NORBETO ALARCON, ALBERTO ARENA, FELIPE BECERRA, CRAIG BOWLAN, RONALD FLORES, DENNIS HARMON, GERALD LLORENCE, JULIO HERNANDEZ, MICHAEL RALSTON, RICARDO RAMOS, RAUL ROMERO, CARLOS SERPAS, RAYMOND ULMER, and EVERARDO VILLA, each in their individual capacity and on behalf of all similarly aggrieved employees and all others similarly situated as to the FLSA claims, and individually as to the state law claims, pray for judgment against Defendants Charter Communications, LLC and Charter Communications, Inc. as follows:

1. For compensatory damages, including all unpaid minimum and/or overtime/double-time wages owing under California and federal law, in an amount according to proof;

2. For prejudgment interest pursuant to Labor Code section 218.6 and Civil Code sections 3288 and 3291 on all amounts claimed;

3. For liquidated damages permitted under Labor Code section 1194.2

4. For liquidated damages permitted under 29 U.S.C § 216(b);

5. For all applicable penalties, including, but not limited to waiting-time penalties under Labor Code Section 203, to the extent applicable herein;

6. For attorney's fees, costs, and interest as permitted under both federal and California law;

7. For injunctive relief ordering the continuing overtime violations to cease, or as the Court otherwise deems just and proper;

8. For a jury trial as to all causes of action; and

9. For such further relief as the Court deems just and equitable.

Date: April 17, 2020     FERGUSON CASE ORR PATERSON LLP

By: /s/ Max R. Engelhardt
    Max R. Engelhardt
    Attorneys for Plaintiffs

Date: April 17, 2020     STRAUSS & STRAUSS APC

By: /s/ Aris E. Karakalos
    Aris E. Karakalos
    Attorneys for Plaintiffs

**DEMAND FOR JURY**

Plaintiffs hereby demand a jury trial.

Date:   April 17, 2020                        FERGUSON CASE ORR PATERSON LLP

                                              By: /s/ Max R. Engelhardt
                                                  Max R. Engelhardt
                                                  Attorneys for Plaintiffs


Date:   April 17, 2020                        STRAUSS & STRAUSS APC

                                              By: /s/ Aris E. Karakalos
                                                  Aris E. Karakalos
                                                  Attorneys for Plaintiffs