1
2
3
4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    MICHAEL GONZALES, et al.,              Case No.  20-cv-02689-EMC

8                    Plaintiffs,

9          v.                              ORDER GRANTING DEFENDANT'S
                                           MOTION TO TRANSFER PURSUANT
10   CHARTER COMMUNICATIONS, LLC, et       TO 28 U.S.C. § 1404(A)
     al.,
11                                         Docket No. 25
                    Defendants.
12

13

14          Plaintiffs are eighteen current or former employees of Defendant Charter Communications,

15   LLC ("Charter").  Plaintiffs, on behalf of themselves and all similarly aggrieved employees, allege

16   that Charter failed to pay minimum and overtime wages in violation of the Fair Labor Standards

17   Act ("FLSA") and the California Labor Code ("CLC").  Pending before the Court is Charter's

18   Motion to Compel Arbitration ("MTC"), Docket No. 22, and Motion to Transfer Venue ("MTT"),

19   Docket No. 25.

20                        I.        BACKGROUND

21          Plaintiffs all worked as Field Operations Maintenance Technicians ("Maintenance Techs")

22   for Charter.  Charter is a Delaware limited liability company with its principal place of business in

23   St. Louis, Missouri.  FAC ¶ 4.  The vast majority of Charter's California employees work in the

24   Central District.  Of 8,935 employees working in its 175 locations in California, 93% (8,329

25   persons) are based in one of Charter's locations in the Central District.  Docket No. 26.

26   (Declaration of Seepa Lee, "Lee Decl.") ¶¶ 7–8.  By contrast, only 0.01% of its California

27   workforce (103 persons) work in the Northern District.  *Id*. ¶¶ 7–9.  Of the 565 Maintenance Techs

28   in California whose jobs are at issue in this case, 84% (477 persons) are based in the Central

United States District Court
Northern District of California

1  District, while only 2% (14 persons) are based in the Northern District. *Id.* ¶ 10.  The sixteen

2  original Plaintiffs all work in the Central District, as do their supervisors and managers. *Id.* ¶¶ 5,

3  10–12.  Plaintiffs' personnel files and other relevant records are physically stored in the Central

4  District. *Id.* ¶ 6.

## II.        LEGAL STANDARD

6          Under 28 U.S.C. § 1404(a), a court may transfer a case to another district where it might

7  have been brought.  "Section 1404(a) provides for transfer to a more convenient forum, not to a

8  forum likely to prove equally convenient or inconvenient." *Mainstay Bus. Sols. v. Indus. Staffing*

9  *Servs.*, 2012 WL 44643, at *1 (E.D. Cal. Jan 9, 2012) (citing *Van Dusen v. Barrack*, 376 U.S. 612,

10  645–46 (1964)).  A court considering a motion to transfer venue must determine whether venue is

11  proper in this district; whether plaintiff could have brought the action in the transferee district; and

12  whether the transfer will promote convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*,

13  487 U.S. 22, 29 (1988); *Hoffman v. Bilaski*, 363 U.S. 335, 343–44 (1960).

14          If venue in the current district is proper, then courts engage in a two-step analysis for

15  motions to transfer.  First, they determine "whether the transferee district was one in which the

16  action 'might have been brought' by the plaintiff." *Hoffman*, 363 U.S. at 343–44 (quoting 28

17  U.S.C. § 1404(a)).  The second step requires the Court to engage in an "individualized, case-by-

18  case consideration of convenience and fairness." *Stewart Org., Inc.*, 487 U.S. at 29 (quoting *Van*

19  *Dusen*, 376 U.S. at 622).  Courts consider the following factors when determining convenience

20  and fairness:  (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the

21  witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law,

22  (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8)

23  the relative court congestion and time to trial in each forum. *See, e.g.*, *Perez v. Performance Food*

24  *Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017); *Brown v.*

25  *Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *2 (N.D. Cal. Feb. 14,

26  2014); *Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *2 (N.D. Cal. Sept.

27  14, 2011).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.    DISCUSSION

A.    Plaintiffs' Choice of Forum

Generally, the plaintiff's choice of forum is accorded significant deference.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  However, where plaintiffs have engaged in forum shopping or chosen a forum with no connection to the underlying dispute, "the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer."  *Gupta v. Perez*, No. 5:14–cv–01102 HRL, 2014 WL 2879743, *3 (N.D. Cal. June 24, 2014) (quoting *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987)).  Also, less deference is due when it is representative in nature.

Here, Plaintiffs' choice of forum is entitled to no deference because (1) there was forum shopping, (2) the operative facts did not occur within the forum, and (3) the case is representative in nature.  When Plaintiffs filed the initial complaint, *none* of the original 16 Plaintiffs resided or worked in the Northern District, and none of their claims arose from conduct in the Northern District.  All worked in the Central District.  When Charter brought these facts which presented a venue problem to Plaintiffs' attention and requested a stipulation to transfer venue, Romero Decl. ¶¶ 2–3, Ex. A at p. 3, Plaintiffs then added two new plaintiffs who worked and lived in the Northern District.  Plaintiffs conceded at the hearing these two plaintiffs were added to address venue; the two new plaintiffs add nothing substantive to the complaint.  Thus, the suit was filed here as a result of forum shopping.  *See Ferrick v. Spotify USA Inc.*, No. 15-09929 BRO, 2016 WL 11623778, at *4 (C.D. Cal. Oct. 26, 2016) ("The Court finds that this late addition of Gerencia— particularly as Plaintiffs added Gerencia after Defendant had already placed them on notice of its desire to transfer the proceeding—as a named plaintiff in what appears to be an attempt to cure improper venue creates, at the very least, a concern that Plaintiffs may be engaged in forum shopping.").

This is underscored by the fact that the Northern District lacks a significant connection to the activities alleged in the complaint.  *Inherent.com v. Martindale–Hubbell*, 420 F. Supp. 2d 1093, 1100 (N.D. Cal. 2006).  As stated at the outset, of the 565 Maintenance Techs in California, 84% (477 persons) are based in the Central District; only 2% (14 persons) are based in the

1    Northern District.  Lee Decl. ¶ 10.  The sixteen original Plaintiffs all work in the Central District,

2    as do their supervisors and managers.  *Id*. ¶¶ 5, 10–12.

3         Moreover, any deference normally owed to Plaintiffs' choice of forum is further

4    diminished because this case is representative in nature.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th

5    Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum, when an

6    individual . . . represents a class, the named plaintiff's choice of forum is given less weight.").

7    Although Plaintiffs argue that "plaintiff's choice of forum in a FLSA case is entitled to more

8    deference than the choice of forum in Rule 23 national class action cases," because the former

9    requires prospective plaintiffs to affirmatively opt-in to the action, citing *Johnson v. VCJ Holding*

10   *Crop.*, 767 F. Supp. 2d 208, 215–16 (D. Maine 2011), *Johnson* is distinguishable from the instant

11   case because the plaintiffs and other identified witnesses in *Johnson* all "reside in the forum state"

12   and "do not have a presence in the proposed transferee district."  *Id*. at 215.

13        Accordingly, the Court affords no deference to Plaintiffs' choice of forum.  *Ferrick*, 2016

14   WL 11623778 at *4 ("Because the Court finds that the named plaintiffs represent a class and there

15   is some indication of forum shopping, the Court accords Plaintiffs' choice of forum no deference

16   in this case.").

17   B.    Convenience of the Parties and Witnesses

18        Convenience of the parties and witnesses support transfer.  Convenience of the witnesses is

19   "often recognized as the most important factor to be considered."  *Metz v. The United States Life*

20   *Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009).  Courts accord less weight to the

21   inconvenience of party witnesses whom the parties can compel to testify.  *See, e.g.*, *Applied*

22   *Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*, No. C 06-2469 CW, 2006 WL 2868971, at *4

23   (N.D. Cal. Oct. 6, 2006) (citing *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal.

24   1988) (discounting inconvenience to party's witnesses when they are employees who can be

25   compelled to testify)).

26        Here, Central District is more convenient for both the parties and witnesses.  Given the

27   vast majority of putative class members and their supervisors work in the Central District, with but

28   a handful in this District, this factor clearly weighs in favor of transfer.  *See Metz*, 674 F. Supp. 2d

United States District Court
Northern District of California

4

1  at 1148 (transferring case to Southern District of New York where plaintiff was the only party or

2  witness in California).  *See generally Mitek Sys., Inc. v. U.S.A.A.*, No. 19-cv-07223-EMC, 2020

3  WL 1922635, at *5 (N.D. Cal. Apr. 21, 2020) (transferring where "there is no indication that there

4  are critical nonparty witnesses in this District").

5         Furthermore, Charter identifies that supervisors in the Central District "will likely provide

6  testimony regarding their expectations of Maintenance Techs, their observations of the work

7  schedules and day-to-day activities of Maintenance Techs, and the implementation of related

8  policies."  MTT at 9.  Though Plaintiffs argue that Charter must identify individual witnesses, this

9  description is enough where the action is a wage-and-hour action and is representative in nature.

10  *See, e.g.*, *Brown v. Abercrombie & Fitch Co.*, No. 4:13–CV–05205, 2014 WL 715082 (N.D. Cal.

11  Feb. 14, 2014) (transferring wage and hour class action to Central District, holding that "to the

12  extent that current and former co-workers may need to testify or be deposed, it is not unreasonable

13  to conclude that the majority of these potential witnesses are more likely to be located in the

14  Central District than the Northern District"); *Perez v. Perf. Food Group, Inc.*, No. 15-cv-02390,

15  2017 WL 66874, at *4 (N.D. Cal. Jan. 6, 2017) (transferring putative class and collective action to

16  Central District "because Plaintiff worked entirely in the Central District, any non-party

17  witnesses—such as his former co-workers or managers—are most likely to reside in the Central

18  District, and therefore, most likely would find it more convenient to testify there"); *see cf. Wilson

19  v. Walgreen Co.*, 2011 WL 4345079 at *3 (finding that convenience of party will not weigh in

20  favor of transfer when "there is no indication that putative class members other than [named

21  plaintiffs] would be needed to testify as witnesses or would want to actively participate in the

22  litigation").

23  C.     Ease of Access to the Evidence

24         The relevant records regarding Plaintiffs and their activities, as well as the personnel

25  records of 84% of the California Maintenance Techs they purport to represent, are located in the

26  Central District.  *See Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 WL 4674396, at *5

27  (N.D. Cal. Sept. 25, 2019) (transferring proceeding to Florida where "the bulk of documentary

28  evidence will likely be in Florida, where [defendant] resides"); *see also Smith v. Oakley*

*Transport, Inc.*, No. 19-cv-05854-EMC, 2020 WL 563076, at *2 (N.D. Cal. Jan. 30, 2020) (transferring proceeding to Florida because "the evidence is far more focused in Florida than in California" where majority of class lived closer to Florida than California).  Here, Plaintiffs do not identify any key evidence in the Northern District.  *See, e.g.*, *Metz*, 674 F. Supp. 2d at 1149 (ease of access weighs in favor of transfer where plaintiff failed to specify sufficient evidence in his chosen venue).

D.    Local Interest in Controversy

For similar reasons discussed above, given nearly all California operations of Charter are in the Central District, the Central District has a stronger interest in this proceeding than the Northern District.  *See Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009) ("[W]hile the Central District's local interest in the controversy may not be substantially stronger than [the Northern District's], it nevertheless remains stronger because the events at issue took place there."); *see also U.S. ex rel Cody v. Mantech Int'l Corp.*, 2016 WL 10537807, *5 (C.D. Cal. 2016) ("[T]he administration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute.").

E.    Court Congestion

The strongest factor that weighs against transfer is the relative court congestion and time to trial in each forum.  On March 13, 2020, Chief Judge Phillips declared a judicial emergency in the Central District pursuant to 18 U.S.C. § 3174, which was subsequently approved by the Judicial Council of the Ninth Circuit for a one-year period until April 13, 2021.  *See* Karakalos Decl. ¶ 4, Ex. A.

It is true, as Charter points out, that Central District's 4.6-month median time from "filing to disposition" in civil cases is almost four months less than the Northern District's 8.2-month time frame, Romero Decl. at Ex. B, pp. 67, 69, and this metric has trended down from 5.2 months as of March 31, 2019, to 4.6 months as of March 31, 2020, while the Northern District trended up from 7.9 months as of March 31, 2019, to 8.2 months as of March 31, 2020.  *Id.*  Nonetheless, the large number of unfilled vacancies in the Central District has exacerbated the judicial emergency

United States District Court
Northern District of California

6

there, and this fact gives this Court pause.  But the Court cannot condone forum shopping when it is plainly obvious the matter is more properly venued in the Central District.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, mindful of adding to the burden of the Central District, the Court nonetheless **GRANTS** Charter's Motion to Transfer Venue.  As such, the Court refers Charter's Motion to Dismiss and Motion to Compel Arbitration to the Central District of California for resolution.

This order disposes of Docket No. 25.


**IT IS SO ORDERED**.


Dated: August 24, 2020

_____
EDWARD M. CHEN
United States District Judge